IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE M.[1],

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

Case No. 6:25-cv-00429-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Michelle M. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under the Social Security Act. The Commissioner's decision is reversed and remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in 1977, plaintiff alleges disability beginning February 7, 2022,[2] due to chronic obstructive pulmonary disease ("COPD"), spine injuries, right hand pain, lung and rib pain, a burning sensation in her legs and feet, and daily headaches. Tr. 603, 606, 653. Her claim was denied initially and upon reconsideration. On February 22, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 231-53. On March 27, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 211-23. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 214. At step two, the ALJ determined the following impairments were medically determinable and severe: "remote history of spinal fusion surgery; low back pain; facet arthropathy; super morbid obesity (BMI 49-52); mild thoracic degenerative disc disease; bilateral carpal tunnel syndrome status post release; gastroesophageal reflux disease ("GERD"); [COPD]; asthma; migraines/headaches; and lower extremity numbness." *Id*. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id*.

Because she did not establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform sedentary work except:

---

[2] Plaintiff previously applied for, and was denied, Disability Insurance Benefits and Supplemental Security Income on December 12, 2014. Tr. 311-23.

Page 2 – OPINION AND ORDER

> [She can] occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally stoop, kneel, crouch, and crawl. [She] can occasionally reach overhead with both upper extremities. [She] can frequently finger with both upper extremities. [She] can tolerate no concentrated exposure to pulmonary irritants.

Tr. 217.

At step four, the ALJ determined plaintiff capable of performing her past relevant work as a receptionist and policyholder information clerk. Tr. 221. At step five, the ALJ alternatively found that plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of document preparer, surveillance system monitor, and paramutual ticket checker. Tr. 222.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) finding the medical opinion of Deborah Reynolds, NP, unpersuasive; (2) discounting plaintiff's subjective symptom testimony by clear and convincing reasons; and (3) by rejecting the lay witness testimony of her son. Pl.'s Opening Br. 2-3 (doc. 11).

**(1)    *Deborah Reynolds.*** Deborah Reynolds, a nurse practitioner, has been treating plaintiff since August 2019. Tr. 1113. In her 2023 opinion, Reynolds diagnosed plaintiff with fusion of spine, radiculopathy, spinal stenosis, intervertebral disc degeneration and displacement, spondylosis without myelopathy or radiculopathy, scoliosis, paresthesia of skin, migraine without aura (not intractable, without status migrainosus), chronic fatigue, major depressive disorder, and insomnia. *Id*. Reynolds stated that plaintiff would have to lie down or rest for twenty minutes to twenty-four hours a day to relieve her symptoms. Tr. 1114. She noted that plaintiff's conditions were multi-factorial and could be related to her mood disorder, daily headaches, recurrent migraines, or her back pain which is relieved only with lying down. *Id*. Reynolds opined that plaintiff could sit for thirty to sixty minutes at a time for a total of twelve hours per day but also

Page 3 – OPINION AND ORDER

could stand or walk for ten minutes at a time, less than one hour total per day. Tr. 1110, 1114. Plaintiff would need to take an unscheduled break every five to ten minutes in an eight-hour workday. Tr. 1114. Reynolds also stated that plaintiff would need to periodically elevate her legs in an eight-hour period. Tr. 1115. Lastly, Reynolds said plaintiff would be off-task at least twenty-five percent of the workday and would be absent at least four workdays per month due to chronic fatigue, depression, dizziness, upper extremity weakness, headaches, back pain, and numbness and tingling in her legs. *Id*.

The ALJ found Reynolds's opinion unpersuasive. Tr. 220. However, the ALJ failed to evaluate the entirety of it. When looking to Reynolds's opinion, the form provided by plaintiff's counsel appears to be a typical treating source statement with several questions and spaces for the provider to handwrite their answers. *See* Tr. 1108-1112. However, Reynolds opted to provide *typed* answers to the form's questions, which were attached to the back of the form and directly correspond to the original form's questions. *See* Tr. 1113-15. In her decision, however, the ALJ stated "Ms. Reynolds opined that [plaintiff] could walk [half] of a block without rest or significant pain, and she could only sit for [sixty] minutes at a time and stand [or] walk [ten] minutes at a time. However, none of the remaining questions on the form submitted by the representative were answered, and no explanation was given for the limits given." Tr. 220. Though the ALJ is correct that Reynolds handwrote and circled a few of the questions on the original form, *see* Tr. 1110, she also provided full explanations for *each question* later on in the opinion, having taken the time to type them out. *Compare* Tr. 220 *with* Tr. 1113-15. For example, Reynolds answered question four by stating "[t]he patient has a [prior medical history] of chronic pain that is multi-factorial in etiology[]" and goes on to reference observations in the record pertaining to her "documented cervical radiculopathy with bilateral upper extremity symptoms" and also mentions her treatment

Page 4 – OPINION AND ORDER

for depression "since 1996 with multiple drug trials of SSRI and SNRI[]s." Tr. 1113-14. But the ALJ did not acknowledge that explanation or any other explanation provided by Reynolds. And there is no way to know how the ALJ would weigh the supportability and consistency factors of this opinion without a full explanation, as the Court can only review the reasons the ALJ asserts, not the reasons the ALJ could have given. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) ("[W]e cannot affirm the decision of any agency on a ground that the agency did not invoke in making its decision."). Thus, the ALJ's assertion that Reynolds's opinion was "of little utility given the lack of specifics given," is not supported by substantial evidence, constitutes harmful error, and requires remand.

**(2)** *Subjective Symptom Testimony.* Plaintiff argues the ALJ failed to give specific, clear and convincing reasons for discounting her subjective symptom testimony. Pl.'s Opening Br. 11-18 (doc. 11); *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (if a claimant provides objective medical evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony); 20 C.F.R. § 404.1529. According to plaintiff, the ALJ's basis for discounting her symptom testimony—inconsistency with the objective medical evidence and conservative treatment—were unsupported or failed to account for the entire record. Pl.'s Opening Br. 11-18 (doc. 11). The Court agrees, in part.

**(a)** **Objective Medical Evidence.** The ALJ acknowledged the record supported plaintiff's complaints regarding her back pain and carpal tunnel condition, but found that neurosurgical intervention was deemed unnecessary, and that many of her examination findings were normal. Tr. 218-19. The ALJ first discussed plaintiff's musculoskeletal issues. The ALJ cited

Page 5 – OPINION AND ORDER

plaintiff's 2022 consultative examination where she exhibited normal gait, good hand-eye coordination, no balance issues, and five-out-of-five muscle strength. Tr. 219, citing Tr. 1008-17. During this same exam, however, the ALJ noted that plaintiff was unable to squat and rise with ease, hop on one foot bilaterally, or walk on her heels and toes. *Id*. The ALJ next discussed plaintiff's 2023 spine specialist consultation, where she presented with a walker, but the ALJ stated the "objective findings were not indicative of substantial limits." Tr. 219, citing Tr. 1134. The ALJ cited plaintiff's "normal muscle tone and bulk [with five-out-of-five] strength throughout[,]" but also cited her "bilateral paraspinal muscle tension around the lumbar spine" and that "[p]ercussion of the spine produced pain at L5-SI[.]" *Id*., citing Tr. 1135-36. The ALJ then cited plaintiff's normal gait but also mentioned that her "back range of motion was full but did produce some pain." *Id*., citing Tr. 1136.

The ALJ failed to identify objective medical evidence that directly conflicted with plaintiff's testimony about limitations stemming from her chronic back pain and did not offer a clear and convincing reason for discounting it. Conflict with objective medical evidence can be a sufficient basis for discounting a claimant's testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022); 20 C.F.R. § 416.929(c)(2). However, the records the ALJ cited establish that plaintiff has a baseline of strength and flexibility. The records also support plaintiff's testimony about the amount and source of the back pain she suffers, but the ALJ seemingly ignores those observations without explanation. *See* Tr. 1134-36. The bulk of plaintiff's testimony described the difficulties she suffers as a result of back pain, which does not conflict with gait or range of motion tests. Because the evidence the ALJ cited did not conflict with plaintiff's symptom testimony, this was not a clear and convincing reason for the ALJ to discount plaintiff's allegations.

Page 6 – OPINION AND ORDER

In contrast, the ALJ provided sufficient evidence and reasoning to discount plaintiff's testimony regarding her asthma, COPD, and stomach issues. Regarding plaintiff's respiratory issues, the ALJ found that the objective medical evidence contrasted with her symptom testimony, mainly because her exacerbation in symptoms were "often linked to infections, including COVID-19 and pneumonia." Tr. 219, citing Tr. 1043, 1090. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), (B); *see also Thompson v. City of Tualatin*, No. 3:21-CV-01587-MO, 2022 WL 742682 (D. Or. Mar. 11, 2022) (holding that because most COVID-19 cases last fewer than 20 days, merely being perceived as having COVID-19 does not qualify as a disability). The ALJ also mentioned that plaintiff "had trouble tolerating powder formulations for controllers" but that nevertheless her "spirometry findings have been normal or indicated only mild obstruction." Tr. 219, citing Tr. 1020-21, 1238, 1257. Plaintiff does not provide any arguments or evidence disputing the ALJ's findings. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009) (the party challenging the ALJ's decision bears the burden of showing harm). Therefore, any challenge to this finding is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

The ALJ next discussed plaintiff's gastrointestinal symptoms and acknowledged her recent reports of "constant abdominal pain and nausea." Tr. 219, citing Tr. 1278. But the ALJ contrasted those complaints with plaintiff's 2024 ultrasound, which showed hepatic steatosis with no acute abnormality. *Id.*, citing Tr. 1284. The ALJ also discussed plaintiff's March 2022 evaluation where she had been referred for gastroesophageal reflux disease. *Id.*, citing Tr. 1001. But only lifestyle

Page 7 – OPINION AND ORDER

changes were recommended. *Id.*, citing Tr. 1003. Again, plaintiff does not provide any arguments or evidence disputing the ALJ's findings, and the ALJ's reasoning is supported by substantial evidence in the record. *See Shinseki*, 556 U.S. at 409-10; *see also Carmickle*, 533 F.3d at 1161 n.2.

Overall, the ALJ's reliance on objective medical evidence was a sufficient basis to discount plaintiff's testimony regarding her asthma, COPD, and stomach issues. *See Smartt*, 53 F.4th at 498. Plaintiff does not contest either line of reasoning. *See generally* Pl.'s Opening Br. (doc. 11). However, the same cannot be said about the ALJ's findings regarding plaintiff's testimony regarding her chronic back pain. Because the evidence the ALJ cited did not conflict with plaintiff's symptom testimony regarding her chronic back pain, this was not a clear and convincing reason for the ALJ to discount plaintiff's allegations and must be addressed on remand.

**(b)    Conservative Treatment.** The ALJ's main reason for discounting plaintiff's symptom testimony was due to plaintiff's conservative treatment and failure to seek treatment. *See* Tr. 218-220. A claimant's conservative course of treatment for an allegedly disabling condition can undercut subjective testimony regarding the severity of the limitations that impairment causes. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as all-disabling as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162.

The ALJ first highlighted plaintiff's "limited and routine" treatment for back pain and carpal tunnel, citing multiple instances where plaintiff demonstrated her disinterest and lack of

Page 8 – OPINION AND ORDER

follow-up. Tr. 218. The ALJ cited physical therapy notes from 2020 where plaintiff attended eight sessions of physical therapy before being discharged due to non-response to scheduling. *Id.*, citing Tr. 666-87, 1214. The ALJ then noted that plaintiff did not attempt additional physical therapy sessions because "physical therapy has never worked." *Id.*, citing Tr. 826-39, 1133, 1263. The ALJ also mentioned that acupuncture and massage have also been recommended to plaintiff, but she was not interested. *Id.*, citing Tr. 1214. The ALJ then acknowledged that plaintiff went to pain specialists in 2021 and underwent epidural steroid injections, with little benefit. *Id.*, citing Tr. 792-825, 826-39. The ALJ summed up her evaluation by stating:

> While [plaintiff] alleges being essentially bedbound, such extreme symptoms are markedly inconsistent with her limited follow-up with treatment and examination findings that have been largely normal. For example, she has alleged difficulty using her right hand, yet has failed to pursue a carpal tunnel release on the right in over [ten] years and was able to use both hands without any apparent issue during the consultative examination. She alleges debilitating pain, yet was only taking over-the-counter medications by the time of the consultative examination in late 2022, months after the amended alleged onset date. She alleges significant headache symptoms, yet admitted during testimony to taking ibuprofen for symptom relief.

Tr. 220 (internal citations omitted).[3]

Plaintiff argues the ALJ's evaluation fails to account for plaintiff's failed treatment modalities and financial barriers to access. *See* Pl.'s Opening Br. 14-18 (doc. 11); *see also* Tr. 811-12, 817, 832, 836, 838, 1059, 1263. Plaintiff indicated that at one point she did not have insurance but was willing to pay out of pocket for her testing using money from her divorce. Tr. 1036. Reynolds then referred plaintiff to neurology for nerve conduction studies but indicated that diagnostic studies were still limited because plaintiff did not have insurance. Tr. 1271, 1040 (plaintiff's symptoms were "likely coming from her neck" and noting, "[a]t this point [plaintiff]

---

[3] The ALJ mischaracterized plaintiff's statement at the administrative hearing here, as plaintiff stated she takes ibuprofen *and Vicodin* for symptom relief, neither of which are helpful. *See* Tr. 241.

Page 9 – OPINION AND ORDER

does not have health insurance, [so] physical therapy and [an] MRI is not much of an option."). Reynolds then tried plaintiff on Tizanidine, but it was not helpful. Tr. 1271, 1263. Plaintiff asserts that once she was secured insurance, she had an MRI on back which showed abnormalities and also had a nerve conduction study and EMG done on her wrist for carpal tunnel. Tr. 1259-60, 1287. In 2024, plaintiff had a carpal tunnel release surgery performed on her dominant hand. Tr. 19-20.

Because the ALJ relied on conservative treatment as a main reason to undermine plaintiff's testimony but failed to consider her financial barriers to treatment and failed treatment modalities, this aspect of plaintiff's care needs to be reevaluated on remand alongside Reynolds's full medical opinion. For example, the ALJ stated that plaintiff "alleges debilitating pain, yet was only taking over-the-counter medications by the time of the consultative examination in late 2022[,]" but also acknowledges that in 2023 plaintiff began taking opiates for chronic pain. *Compare* Tr. 220 *with* Tr. 218, citing Tr. 1233, 1273. And despite acknowledging that plaintiff was taking opiates for chronic pain, the record shows that plaintiff tried numerous pain medications all with side effects and limited benefit, which the ALJ failed to mention in her decision. *See* Tr. 1059, 820 (Gabapentin caused dizziness, lightheadedness, and nausea), 817 (Lyrica caused swelling in plaintiff's hands and feet), 811-12 (Belbuca was ineffective and caused dizziness), 1079 (unable to tolerate Topamax and Phentermine due to insomnia), 1263 (Tizanidine was unhelpful), 1220 (Hydrocodone was only temporarily helpful). The record also documents that plaintiff underwent interlaminar epidural steroid injections and a peripheral nerve block for cluneal nerve entrapment without benefit. Tr. 832, 836, 838. The ALJ failed to acknowledge that plaintiff treated her back condition with steroidal injections, which are not considered typical "conservative" treatment. *See, e.g., Contreras v. Berryhill*, No. 19-CV-00154-KAW, 2020 WL 619792, at *4 (N.D. Cal. Feb. 10, 2020) (noting that "[n]umerous courts have rejected the argument that trigger point injections are

Page 10 – OPINION AND ORDER

'conservative'"); *see also Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (suggesting treatments such as occipital nerve blocks and trigger point injections do not constitute conservative treatment). The ALJ also faults plaintiff for failing to pursue a carpal tunnel release but failed to consider that she was unable to afford the testing and procedure without insurance. *See* Tr. 220, 1036, 1040, 1271. This is a sufficient explanation for failure to follow treatment advice, and it was error for the ALJ not to consider it. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Plaintiff's supposed "limited" care for her back pain and "fail[ure] to pursue" a carpal tunnel release were not clear and convincing reasons to reject plaintiff's testimony about these symptoms. Tr. 220. On remand, the ALJ must consider plaintiff's full treatment history and her justifications for failure to follow through with carpal tunnel release surgery.

**(3)    *Lay Witness Testimony.*** Plaintiff's son provided a third-party statement regarding plaintiff's physical health-related limitations that tracked plaintiff's own allegations. *See* Tr. 663. The ALJ stated "[w]hile carefully considered and generally consistent with [plaintiff]'s subjective reports, such extreme limits opined are not reflected in the record. Exams do not show findings indicative of such inactivity, such as muscle atrophy, and [plaintiff]'s limited follow-through with treatment does not support pain at the level alleged." Plaintiff argues the ALJ's reasoning is not supported by substantial evidence in the record. Pl.'s Opening Br. 19 (doc. 11). The Court agrees.

The ALJ did not rely on substantial evidence when disregarding plaintiff's son's testimony and therefore erred. As discussed above, the ALJ failed to supply legally sufficient reasons for rejecting plaintiff's subjective complaints about her back pain and carpal tunnel, and these same rationales do not support the decision to discount the lay witness testimony. The ALJ erred in rejecting the lay testimony in this case. *Garrison v. Colvin*, 759 F.3d 995, 1020-23 (9th Cir. 2014).

Page 11 – OPINION AND ORDER

**(4)**    ***Remedy.*** Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted). Plaintiff asks the Court to remand for an award of benefits but fails to address all of the requirements. Pl.'s Opening Br. 19 (doc. 11). Because plaintiff fails to meaningfully address the credit-as-true standard, it is unnecessary for this Court to address whether those requirements are met. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (discussing credit-as-true standard). Instead, the Court concludes that a remand for further proceedings would be useful because there are conflicts and ambiguities in the record that must be resolved by the ALJ. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014).

As discussed herein, the ALJ committed harmful legal error in regard to Reynolds's medical opinion and plaintiff's subjective symptom testimony surrounding her physical impairments. Further proceedings would be useful because the record is ambiguous as to plaintiff's functional abilities. As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Therefore, upon remand, the ALJ must review the entire record, including Reynolds's full medical opinion, consider plaintiff's barriers to treatment and failed treatment, and opine as to her combined functional abilities and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

**CONCLUSION**

Page 12 – OPINION AND ORDER

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 6th day of May, 2026.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge

Page 13 – OPINION AND ORDER